THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION



**FILED**

AUG 2 5 2015

Clerk, U.S District Court
District Of Montana
Missoula

| | |
|---|---|
| CLIFTON RAY OLIVER, | CV 14-00084-M-DLC-JCL |
| Plaintiff, | |
| vs. | ORDER |
| GUY BAKER, GEOFF CURTIS, SEAN MANRAKSA, OFFICER BLAKELY, and OFFICER KANEFF,[1] | |
| Defendants. | |

Plaintiff Clifton Oliver is a state prisoner proceeding in forma pauperis and

without counsel. He has filed a "Motion for the Appointment of Counsel (Motion

for Reconsideration)" (Doc. 40), a "Motion for Issuance of Subpoena Duces

Tecum after Briefing Scheduling" (Doc. 44), a "Motion Requesting Court to

Allow Plaintiff's Memorandum of Law to be Supplemented with his Motion for

Appointment of Counsel" (Doc. 47), a "Motion Requesting the Court to

Transfer/Copy Exhibits (Doc. 48), a "Motion Requesting the Court to Allow

Plaintiff to Add Defendants and Additional Counts" (Doc. 49), a "Motion

---

[1]The caption has been amended to reflect the June 24, 2015 dismissal of
Defendants International Hotel Group, Bernthal, Giffin, Pritchett, Ramsted, Corey
and the Missoula Police Department. (Doc. 41.)

1

Requesting Court to Extend Expert Deadline" (Doc. 53), and a "Motion Requesting Court to Appoint Independent Expert" (Doc. 54.)

## I. Background

This matter arises from Oliver's February 3, 2012 arrest, incarceration, and prosecution for promoting prostitution. The promoting prostitution charge was dismissed in February 2014 after Oliver plead guilty to witness tampering. Oliver originally brought claims against employees of the Staybridge Suites (a hotel where he was allegedly conducting prostitution activities) and claims against law enforcement officers for false arrest and malicious prosecution. On April 14, 2015, the undersigned recommended the dismissal of all claims against the Hotel Defendants, all claims against the City of Missoula Police Department, and Oliver's claim that officers fabricated information in a search warrant application for a body wire. (Doc. 16 at 12.) Those Findings and Recommendations were adopted by Chief Judge Christensen on June 24, 2015. (Docs. 41.) Law enforcement Defendants Baker, Curtis, Manraksa, Blakely, and Kaneff were required to respond to Oliver's false arrest (Count 3), malicious prosecution (Counts 1, 9), and use of force (Count 4) claims. (Doc. 16 at 12.)

Oliver filed a Supplemental Amended Complaint on April 27, 2015 raising claims of false information being provided in search warrant applications for his

vehicle and phone records (Counts 13, 14); malicious prosecution in Flathead County (Count 15); a First Amendment retaliation claim (Count 16); and a claim of negligent spoilation of evidence (Count 17.) The Court directed service of those claims upon Defendants on May 19, 2015. (Doc. 29.) Oliver filed a motion to amend on May 4, 2015. (Doc. 24.) The Court granted that motion as to Oliver's conspiracy claim against the law enforcement Defendants on May 19, 2015. (Doc. 29.) On June 24, 2015, Judge Christensen adopted the Court's recommendation to deny the motion to amend to add an equal protection claim against the Hotel Defendants on June 24, 2015. (Doc. 42.)

## II. Motion for Appointment of Counsel (Motion for Reconsideration)[2]

Oliver filed a Motion to Appoint Counsel when he filed his Complaint on March 28, 2014. (Doc. 3.) That motion was denied without prejudice subject to his right to renew the motion after the Court completed the pre-screening of the Complaint as required by 28 U.S.C. § 1915. As this matter has now been served on Defendants, an Answer filed, and a Scheduling Order issued, the circumstances have sufficiently changed such that the Court will consider Oliver's new motion for appointment of counsel.

---

[2]Oliver has also filed a motion to file a supplemental brief on his motion for appointment of counsel. The Court will grant that motion (Doc. 47) and has considered Oliver's supplemental brief on this issue (Doc. 47-1).

No one, including incarcerated prisoners, has a constitutional right to be represented by appointed counsel when they choose to bring a civil lawsuit under 42 U.S.C. § 1983. *Rand v. Rowland*, 113 F.3d 1520, 1525 (9th Cir. 1997), *withdrawn on other grounds*, 154 F.3d 952, 962 (9th Cir. 1998). Unlike criminal cases, the statute that applies does not give a court the power to simply appoint an attorney in a civil case. 28 U.S.C. § 1915 only allows the Court to "request" counsel to represent a litigant in a civil case who is proceeding in forma pauperis. 28 U.S.C. § 1915(e)(1). A judge cannot order a lawyer to represent a plaintiff in a § 1983 lawsuit—a judge can merely request a lawyer to do so. *Mallard v. United States Dist. Court*, 490 U.S. 296, 310 (1989). Further, much different then in a criminal case, a judge in a civil case may only request counsel for an indigent plaintiff under "exceptional circumstances." 28 U.S.C. § 1915(e)(1); *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991).

> A finding of exceptional circumstances requires an evaluation of both 'the likelihood of success on the merits and the ability of the petitioner to articulate his claims pro se in light of the complexity of the legal issues involved.' Neither of these factors is dispositive and both must be viewed together before reaching a decision.

*Terrell*, 935 F.2d at 1017 (citing *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986) (citations omitted).

Oliver alleges he was unlawfully arrested without probable cause because

4

Defendants fabricated and/or destroyed evidence. He provided a transcript of the suppression hearing held in his underlying criminal action which he asserts proves the merits of his civil action. He contends the case will involve expert testimony in computers, e-mail, and Google Voice; he will be unable to view some evidence because video and audio recordings are not available to inmates at Montana State Prison; the testimony will be in sharp conflict; he suffers from paranoid delusions which may appear even though he is on medications; the case will be tried before a jury; and there are legal issues which are beyond his ability to comprehend.

Many indigent plaintiffs might fare better if represented by counsel, particularly in more complex areas such as discovery and the securing of expert testimony. However, this is not the test. *Rand*, 113 F.3d at 1525. Plaintiffs representing themselves are rarely able to research and investigate facts easily. This alone does not deem a case complex. *See Wilborn*, 789 F.2d at 1331. Factual disputes and thus anticipated examination of witnesses at trial does not establish exceptional circumstances supporting an appointment of counsel. *Rand*, 113 F.3d at 1525.

Based upon the exhibits currently in the record, the Court has serious doubts about Oliver's likelihood of success on the merits. For example, Oliver alleged he was arrested without probable cause on February 3, 2012 because the Defendant

officers did not have sufficient information at the time of his arrest connecting him to the alleged prostitution. In their Answer, however, Defendants clarified that Oliver was arrested on a municipal warrant for speeding and driving with a suspended license. (Answer, Doc. 34 at 9). If Oliver was arrested on a warrant that would be sufficient probable cause and it would seriously undermine Oliver's likelihood of success on the merits of his false arrest claims.

Similarly, Oliver has presented a number of malicious prosecution claims. Under 42 U.S.C. § 1983, a criminal defendant may maintain a malicious prosecution claim against police officers and other persons who wrongfully cause charges to be filed. *Smith v. Almada*, 640 F.3d 931, 938 (9th Cir. 2011); *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004). Probable cause is an absolute defense to a malicious prosecution claim. *Smith*, 640 F.3d at 938; *Lassiter v. City of Bremerton*, 556 F.3d 1049, 1054–55 (9th Cir. 2009). Oliver submitted into evidence a February 6, 2012 interview with Alida Lattimore, the woman arrested for prostitution with Oliver. In that interview just three days after Oliver's arrest, Ms. Lattimore admitted she engaged in sexual acts for money and that Oliver set up the encounters and dictated the money to be collected. (Doc. 15-1 at 11-19.) Even if Ms. Lattimore provided this information pursuant to an immunity agreement, her admissions in that interview establish sufficient probable

cause that Oliver was promoting prostitution. This evidence undermines the likelihood of success of Oliver's malicious prosecution claims.

In addition, Oliver has demonstrated his ability to articulate his claims pro se. The Court is aware of Oliver's mental health issues but he makes an impressive showing in his filings in this case and other cases he filed in this Court. He arguments are coherent and supported by relevant case law. He has not made a sufficient showing of exceptional circumstances and the motion will be denied.

## III.   Motion Requesting the Court to Allow Plaintiff to Add Defendants and Additional Counts (Doc. 49)

Oliver has filed another yet another motion to amend his complaint seeking to add the City of Missoula[3] and an additional claim against Defendants. The first new claim, Count 19, is a *Monell* claim brought against the City of Missoula for failing to adequately train or supervise its officers regarding false arrest, spoilation of evidence, and fabricated police reports. Count 20 is an assault and battery claim against all Defendants regarding Oliver being subjected to offensive touching, handcuffing, and searches without his consent while he was incarcerated. The motion should be denied.

---

[3]In his motion to amend, Oliver sought to add the City of Missoula Police Department as a Defendant. In his Reply brief, he indicated that he wanted to add the City of Missoula as a Defendant instead of the Missoula Police Department. (Amend Reply, Doc. 52.)

After the filing of a responsive pleading, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed.R.Civ.P. 15(a)(2). "The grant or denial of an opportunity to amend is within the discretion of the District Court." *Foman v. Davis*, 371 U.S. 178, 182 (1962). While leave to amend should be freely granted, the United States Supreme Court has also noted times where such an amendment might not be allowed, "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the amendments, futility of amendment, etc." *Foman*, 371 U.S. at 182; *Sharkey v. O'Neal*, 778 F.3d 767, 774 (9th Cir. 2015). "Futility alone can justify the denial of a motion to amend." *Nunes v. Ashcroft*, 348 F.3d 815, 818 (9th Cir. 2003).

Defendants object to Oliver's latest motion to amend arguing that the amendments are barred by the doctrine of collateral estoppel and are therefore futile. Collateral estoppel "precludes relitigation of issues argued and decided in prior proceedings." *Diruzza v. County of Tehama*, 323 F.3d 1147, 1152 (9th Cir. 2003) (citation omitted). "State law governs the application of collateral estoppel or issue preclusion to a state court judgment in a federal civil rights action." *Ayers v. City of Richmond*, 895 F.2d 1267, 1270 (9th Cir. 1990) (*citing Allen v.*

*McCurry*, 449 U.S. 90, 96 (1980); *Takahashi v. Bd. of Trustees*, 783 F.2d 848, 850

(9th Cir. 1986)). Montana applies a four-element test to determine whether

relitigation of an issue is barred: (1) whether the issue decided in the prior

adjudication is identical to the issue raised in the action in question; (2) whether

there was a final judgment on the merits in the prior adjudication; (3) whether the

party against whom preclusion is now asserted is a party or in privity with a party

to the prior adjudication; and (4) whether the party against whom preclusion is

now asserted was afforded a full and fair opportunity to litigate the issue which

may be barred. *McDaniel v. State*, 350 Mont. 422, 432, 208 P.3d 817, 825-826

(Mont. 2009).

Oliver correctly argues that there is an exception to collateral estoppel

"when '[t]he party against whom preclusion is sought could not, as a matter of

law, have obtained review of the judgment in the initial action [.']" *Lombardi v.

City of El Cajon*, 117 F.3d 1117, 1122 (9th Cir. 1997); Restatement (Second) of

Judgments § 28(1). Oliver did not have an opportunity to appeal the denial of his

suppression motion because the promoting prostitution charges were dismissed

four days after the ruling on the suppression motion. (Suppression Ruling, Doc.

45-1; Judgment, Doc. 45-2.) As there was not final judgment regarding the

suppression ruling, at least on this record, it does not appear that this element can

be met. Oliver's claims do not appear to be barred by collateral estoppel and the motion to amend cannot be denied on this basis.

The Court must therefore consider whether Oliver's motion to amend should otherwise be granted. Oliver first seeks to add the City of Missoula. A government entity may not be held liable under 42 U.S.C. § 1983, unless a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights. *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 694 (1978). In order to establish liability for governmental entities under *Monell*, a plaintiff must prove: "(1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy "amounts to deliberate indifference" to the plaintiff's constitutional right; and (4) that the policy is the "moving force behind the constitutional violation." *Oviatt by and through Waugh v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (*quoting City of Canton v. Harris*, 489 U.S. 378, 388–89 (1989)).

Failure to train may amount to a policy of "deliberate indifference," if the need to train was obvious and the failure to do so made a violation of constitutional rights likely. *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). Similarly, a failure to supervise that is "sufficiently inadequate" may amount to

"deliberate indifference." *Davis v. City of Ellensburg*, 869 F.2d 1230, 1235 (9th Cir. 1989). Mere negligence in training or supervision, however, does not give rise to a *Monell* claim. *Id.*

Oliver makes the following allegations against the City: (1) the City had a custom to allow officers to use websites such as Googlevoice.com without ability to save information and save original content; (2) the City had a custom or policy of allowing officers to use Googlevoice.com without submitting phone numbers and e-mail address to supervisors; (3) the City had a custom or policy of allowing officers to tamper, conceal, alter, or destroy electronic data with Word document alteration programs without supervisor's authorization, thus allowing officers to submit Word document into evidence without original data; (4) the City failed to train supervising officer to verify original data before signing off on police reports; (5) the City failed to train Defendant Curtis on how to preserve electronic data; (6) the City failed to train officers on mental culpability elements needed for probable cause to arrest suspects for specific intent crimes; (7) the City failed to train officers on dangers of tampering with evidence by way of Word document; and (8) the City had a policy or custom of indifference to misconduct by its employees and policy or custom of tolerating a code of silence between officers. (Doc. 49-1 at 2-4.)

11

Oliver has failed to supply sufficiently well-pled factual allegations to render the City's direct liability plausible and raise his right to relief from the City "above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Oliver merely asserts, in conclusory fashion, that the City had customs, policies, or practices (including inadequate training and supervision) that led to or encouraged the alleged constitutional violations. It is true that "[i]n limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 131 S.Ct. 1350, 1359, 179 L.Ed.2d 417 (2011). But the Supreme Court has cautioned that "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on failure to train." *Connick*, 131 S.Ct. at 1359 (*citing Oklahoma City v. Tuttle*, 471 U.S. 808, 822–23 (1985) (plurality) ("[A] 'policy' of 'inadequate training' is 'far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell*.' ")).

There is nothing to indicate that Oliver is relying on anything other than his own single incident, which is insufficient. Conclusory and generic allegations are insufficient to plead municipal liability under *Monell*. *See e.g., Okla. City v. Tuttle*, 471 U.S. 808, 823–24 (1985) ("[p]roof of a single incident of

unconstitutional activity is not sufficient to impose liability under *Monell*, unless

proof of the incident includes proof that it was caused by an existing,

unconstitutional municipal policy, which policy can be attributed to a municipal

policymaker"). Oliver's custom and practice claim does not allege any facts aside

from the facts of the alleged incident in this case. These conclusory allegations

are insufficient to meet the pleading standard.

Moreover, even if the City had a custom of allowing officers to copy and

paste information from their Google Voice accounts into Word documents,[4]

Oliver does not allege how such a policy caused a violation of his constitutional

rights. The alleged constitutional violation is not the copying and pasting of the

Google Voice information into a Word document, but rather the manipulation of

that information by officers. The City may have a policy of allowing officers to

copy and paste such information from Google Voice, but there are no facts to

plausibly suggest that the City had a policy of allowing officers to fabricate

evidence and submit false warrant applications. He fails to state a plausible claim

under *Monell* against the City of Missoula.

---

[4]Oliver submitted an affidavit from Officer Curtis in which he
acknowledges that copying text messages from Google Voice into a Word
document is the method used in all cases by the Missoula Police Department when
recovering electronic evidence. (Curtis Affidavit, Doc. 40-2 at 38.)

The second claim Oliver seeks to add is a claim against all Defendants alleging he was subjected to offensive touching, handcuffing, and searches while in custody which was caused by the Defendants' false arrest. As set forth above, the Court is skeptical regarding the viability of Oliver's false arrest and malicious prosecution claims. Regardless, none of the named Defendants are responsible for the treatment Oliver received while he was incarcerated in the Missoula County Detention Center. That facility is operated by Missoula County which is not a Defendant to this action.

Oliver's Motion Requesting Court to Allow him to Add Defendants and Additional Counts should be denied.

## IV. Motion for Subpoenas[5]

Generally the Court does not become involved in discovery issues but will construe Oliver's filing as a request for the Court to serve a number of subpoenas duces tecum. As Oliver is proceeding in forma pauperis, the "officers of the court shall issue and serve all process." 28 U.S.C. § 1915(d). Personal service of a subpoena duces tecum is required under Rule 45(b) but "[d]irecting the Marshal's

---

[5]Oliver has also filed a motion requesting that the exhibits to his motion for the appointment of counsel be also considered as exhibits for his motion for subpoenas. (Doc. 48.) That motion will be granted and the exhibits to Oliver's motion for appointment of counsel have been considered in the analysis of his motion for subpoenas.

Office to expend its resources personally serving a subpoena is not taken lightly by the court." *See Frazier v. Redding Police Dep't*, 2012 WL 5868573 (E.D.Cal.) (citation omitted). As such, the authorization of a subpoena duces tecum requested by a forma pauperis litigant is subject to limitations. *Alexander v. California Dep't of Corrections*, 2010 WL 5114931 (E.D.Cal). "Limitations include the relevance of the information sought as well as the burden and expense to the non-party providing the requested information." *See Frazier*, 2012 WL 5868573. A motion for issuance of subpoena duces tecum should clearly identify the documents sought and show that the records are only obtainable through the identified non-party. *Alexander*, 2010 WL 5114931.

Oliver first seeks information from the Staybridge Suites and International Hotel Group. (Doc. 44 at 1.) The Hotel Defendants have been dismissed from this action. Oliver is seeking employee records, training records, and information from Staybridge Suites which is no longer relevant to this action. Oliver's request that a subpoena be issued to the Staybridge Suites will be denied.

Second, Oliver seeks a subpoena for Google Inc, Legal Investigative Support for the following documents: (1) records pertaining to email account eliteescorts0000@gmail.com; (2) records for Googlevoice.com account numbers 406-203-4650, 541-510-7319, 818-850-2802 and routing number 202-709-3512

from January 20, 2012 through February 4, 2012; (3) the Google Voice account user manual; and (4) country and timezone for Google Voice call records. (Doc. 44 at 3-4.) Presumably Oliver is seeking information regarding his claim that Defendants fabricated text message conversations in their reports and search warrant applications.[6] In response, Defendants argue that Oliver raised the same issue in a motion to suppress filed in his state criminal case and the matter was fully litigated there and should not be relitigated here. As discussed above, the Court cannot say at this point that Oliver's claims regarding the text messages are barred by collateral estoppel.

Regardless, the only possible relevant information from Google would be the original text message string at issue in this case. But, in Judge Townsend's Order and Memorandum denying Oliver's Motion to Suppress, she stated, "The Defendant attempted to obtain the text messages content and call records from Google, but Google indicated that the numbers were reassigned to a new user and were no longer available." (Townsend Order, Doc. 45-1 at 4.) Oliver acknowledges that his state court defense counsel already attempted to subpoena

_____

[6]Claims regarding Defendants' application for a search warrant for a body wire have been dismissed. Oliver, however, alleged in his Supplemental Amended Complaint (Doc. 18) that Defendants Curtis and Manraksa also filed false search warrant applications on February 3, 2012 and February 7, 2012 for his vehicle and phone records.

the text messages by subpoena and was unable to do so because they had been deleted from their servers. (Supplement to Complaint, Doc. 18 at 12.)

Oliver has given no reason why an attempt to obtain these records now (a year and a half after Judge Townsend issued her order and three and half years since the text messages were sent) would be any more successful than it was in 2014. The request will be denied.

Third, Oliver seeks information from Defendants and the Missoula Police Department (Doc. 44 at 4.) The Court will not issue a subpoena for information that Oliver could potentially obtain from Defendants through other methods of discovery which do not require Court intervention or the expenditure of governmental resources. Oliver may issue discovery requests, without subpoena, upon any of the named parties. *See* Fed.R.Civ.P. 33(a)(1) ("a party may serve on any other party no more than 25 written interrogatories"); Fed.R.Civ.P. 34(a) ("[a] party may serve on any other party a request" for the production of documents); Fed.R.Civ.P. 36(a)(1) ("a party may serve on any other party a written request to admit"). If Oliver can obtain the information he seeks from Defendants without Court intervention and without expending the resources of the United States Marshal's Office, the Court will not issue a subpoena for such information. The Court also notes that Oliver seeks the criminal history information of the Hotel

employees. As all claims against the Hotel employees have been dismissed, Defendants need not provide this information to Oliver.

Fourth, Oliver seeks information from his former defense counsel. Oliver should be able to obtain this information without a subpoena as he is seeking information from his criminal defense files. Should Oliver be unable to obtain this information, he may renew his motion with an explanation.

Fifth, Oliver seeks to "interview by way of subpoena" a number of non-party witnesses. There is no vehicle in the Federal Rules for "interview by way of subpoena." The Court will not authorize subpoenas for depositions.

Sixth, Oliver seeks subpoenas to obtain records from the Missoula County and City Courts. Oliver should be able to obtain this information by way of request to the appropriate clerks of court. There is no need to issue a subpoena for public documents which could be obtain through written request.

## V. Motion for Appointed Expert and to Extend Expert Deadline

Oliver requests the Court to appoint an independent expert to assist the Court and the jury in understanding the issues of (1) the officers' duty to preserve evidence, (2) the elements of promoting prostitution, (3) probable cause for prostitution, and (4) the details and opinions of the investigation. (Doc. 54.)

Under Rule 706, experts are properly appointed in the court's discretion to

assist the trier of fact in evaluating contradictory or complex evidence. *Walker v. Am. Home Shield Long Term Disability Plan*, 180 F.3d 1065, 1071 (9th Cir. 1999) (independent expert appointed to assist court in evaluating conflicting evidence of elusive disease of unknown origin); *McKinney v. Anderson*, 924 F.2d 1500, 1510–11 (9th Cir. 1991) (noting court's discretion to appoint expert in case involving complex scientific issues concerning effects of secondary cigarette smoke), *vacated on other grounds, Helling v. McKinney*, 502 U.S. 903 (1991). But appointment is not appropriate for the purpose of assisting a litigating party for his own benefit. *See Carranza v. Fraas*, 763 F.Supp.2d 113, 119–20 (D.D.C. 2011); *Pedraza v. Jones*, 71 F.3d 194, 198 n. 5 (5th Cir. 1995).

Oliver has not shown issues of requisite complexity requiring appointment of an expert witness. In fact, as set forth above, the Court questions the likelihood of success of the majority of his claims. He requests an independent expert to establish the elements of his case and for his own assistance, which is outside the scope of Rule 706. Appointment of an independent expert under Rule 706 should be reserved for exceptional cases in which the ordinary adversary process does not suffice. *In re Joint E. & S. Dists. Asbestos Litig.*, 830 F.Supp. 686, 693 (E.D.N.Y. 1993) (allowing appointment of independent expert in mass tort case). This case is not such an exceptional case. The Court does not find the issues presented in this

case to be sufficiently complex, thereby necessitating an expert. The motion for the appointment of an independent expert will be denied.

The Court will however, extend the deadline for expert witness disclosures.

Based upon the foregoing, the Court issues the following:

## ORDER

1. Oliver's "Motion for the Appointment of Counsel (Motion for Reconsideration)" (Doc. 40) is denied.

2. Oliver's "Motion for Issuance of Subpoena Duces Tecum after Briefing Scheduling" (Doc. 44) is denied.

3. Oliver's "Motion Requesting Court to Allow Plaintiff's Memorandum of Law to be Supplemented with his Motion for Appointment of Counsel" (Doc. 47) is granted.

4. Oliver's "Motion Requesting the Court to Transfer/Copy Exhibits (Doc. 48) is denied.

5. Oliver's "Motion Requesting Court to Extend Expert Deadline" (Doc. 53) is granted. The parties shall have until September 11, 2015 to exchange expert witness disclosures.

6. Oliver's "Motion Requesting Court to Appoint Independent Expert" (Doc. 54) is denied.

Further, the Court issues the following:

## RECOMMENDATION

Oliver's "Motion Requesting the Court to Allow Plaintiff to Add Defendants and Additional Counts" (Doc. 49) should be denied.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

The parties may file objections to these Findings and Recommendation within fourteen (14) days after service (mailing) hereof.[7] 28 U.S.C. § 636. Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

This order is not immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Fed.R.App.P. 4(a), should not be filed until entry of the District Court's final judgment.

DATED this 25th day of August, 2015.

_Jeremiah C. Lynch_
Jeremiah C. Lynch
United States Magistrate Judge

---

[7]As this deadline allows a party to act after the Findings and Recommendations is "served," it falls under Fed.R.Civ.P. 6(d). Therefore, three (3) days are added after the period would otherwise expire.