**FILED**

JUN 07 2016

Clerk, U.S. District Court
District Of Montana
Missoula

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| CLIFTON RAY OLIVER,<br><br>       Plaintiff,<br><br>  vs.<br><br>GUY BAKER, GEOFF CURTIS, SEAN MANRAKSA, OFFICER BLAKELY, and OFFICER KANEFF,<br><br>       Defendants. | CV 14-00084-M-DLC-JCL<br><br><br>ORDER AND FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |

Pending are the parties' motions for summary judgment. (Docs. 103, 109, and 128) and Plaintiff Clifton Oliver's Motion for Subpoenas (Doc. 127). For the reasons stated herein, Defendants' Motions for Summary Judgment should be granted and Oliver's motions denied.

The majority of Oliver's claims revolve around his February 2, 2012 arrest and subsequent prosecution for promoting prostitution (Counts 1, 3, 9, 10, 12, 13, 14, 15, and 17). Those claims should all be dismissed as there was sufficient probable cause to arrest, obtain warrants for, and prosecute Oliver for promoting prostitution. Similarly, there is no evidence to support claims of invasion of privacy (Count 8), slander/libel (Count 11), spoilation of evidence (Count 17), or

denial of equal protection (Count 18).

This matter should be dismissed.

## I. SUMMARY OF THE CASE

On February 2, 2012, Oliver was charged with promoting prostitution. He ultimately plead guilty pursuant to a plea agreement to one count of tampering with a witness (the young woman whom he was accused of using for purposes of prostitution) after being found incompetent to stand trial in federal court. Oliver was sentenced to four years confinement and received credit for all time served in custody from February 2, 2012 until he was released on March 12, 2016. (Judgment, Doc. 107-12 at 17; Notice of Change of Address, Doc. 141)

Oliver continues to proclaim his innocence even though it was obvious to hotel employees where he was staying that he and his accomplice were engaging in prostitution, it was obvious to the officers who arrested him that they were engaging in prostitution, and his accomplice confirmed in an interview four days after his arrest that Oliver was her "pimp," he controlled the money, he posted ads on backpage.com, he communicated with customers, he drove her to meet customers, he drove her from Spokane to Montana to engage in prostitution, and he had previously driven a minor to Montana to also engage in prostitution (Doc. 118-1).

Oliver's allegations are frivolous and baseless. Aside from his implausible conclusory rantings, there is absolutely no evidence that he was falsely arrested or prosecuted. This matter should be dismissed with prejudice and Oliver should be issued a strike for filing a frivolous and malicious lawsuit.

## II. FACTUAL BACKGROUND

On December 23, 2011, Oliver was stopped for a traffic violation by a Missoula police officer and issued citations for speeding and driving while his licensed was suspended. (Complaint, Doc. 2 at 15.) Oliver failed to appear in court on those citations and a warrant was issued for his arrest by Missoula Municipal Court on January 26, 2012 with a bond amount of $500.00. (Warrant, Doc. 120-3.)

On February 2, 2012, Oliver arrived at the Staybridge Suites in Missoula at approximately 3:00 p.m. (Doc. 2 at 18, ¶ 58.) He was given room 104. (911 Transcript, Doc. 120-1 at 3.) While he was checking in, a hotel employee named Kathleen Giffen called 911 and reported that she had seen a female in Oliver's car with what she described as a "crackpipe." (911 Transcript, Doc. 120-1 at 3-4.) She also expressed concern that Oliver usually had younger girls with him and that another guest mentioned to the front desk that Oliver approached him at a gas station and asked if he was interested in one of Oliver's girls. (911 Transcript,

Doc. 120-1 at 2.)

Officer Kaneff responded to the Staybridge Suites at around 3:15 p.m. Dispatch had advised him that there was a $500 municipal warrant out for Oliver's arrest. (Case Report, Doc. 57-3 at 5.) Kaneff spoke to several employees at the hotel and obtained witness statements from Kathleen Giffin and Bailey Ramstad indicating that Oliver generally stays with two girls for 2-4 nights, always pays in case, offered a girl to another guest, and that the girls with Oliver looked like "working girls." (Stmts, Doc. 107-3, 107-4.) This information was forwarded to Officers Curtis and Manraksa.

A hotel employee asked Oliver for his phone number between 4:45 p.m. and 5:00 p.m. (Complaint, Doc. 2 at 29, ¶ 111.) At 4:53 p.m. Kathy Giffen sent a text message to Officer Curtis that another number on Oliver's hotel reservation was 971-207-5092. At 5:10 p.m., she sent another text to Curtis and told him that Oliver's car was gone. (Oliver's Exhibit X, Doc. 130.)

Officer Curtis also became aware of an advertisement on the website backpage.com which is a website which offers adult entertainment, escorts, hom rentals, car sales, etc. (Oliver SDF, Doc. 132 at 4.) The advertisement showed pictures of a girl and stated that a girl named "Sunrae" was available for $250 an hour. The ad provided language that included: "Discreet clean & 100% real sexy

cutie!" and "My provocative smile & flirtatious moves will arouse all of your desires. Something this sweet & stunning can be extremely addictive. 5'6 125LBS 32C. text-971 207 5092-number change 818 850 2802 'Sunrae" (Missoula)." (Baker's SUF, Doc. 111 at 7, ¶ 10; undisputed; backpage.com ad, Oliver's Exhibit P, Doc. 135-3 at 51.) Curtis did not know who posted the ad but he believed it was Oliver because the phone number on the ad was the same number Oliver had given to the front desk at the Staybridge Suites. (Msla PD SUF, Doc. 107 at 5, ¶ 10.)

Officer Curtis began texting the 971-207-5092 number at 6:05 p.m. on February 2, 2012. The relevant texts are as follows:

6:05 pm–Officer Curtis: sunrae
6:05 pm–19712075092: Yes
6:06 pm–Officer Curtis: looking for fun tonight aval
6:07 pm–19712075092: U in missoula
6:07 pm–Officer Curtis: yes u r too right
6:29 pm–Officer Curtis: meet later?
6:29 pm–19712075092: Yea. What time
6:31 pm–Officer Curtis: incal ok 930 or so BBBJ[1]
6:34 pm–19712075092: No bbj
6:36 pm–Officer Curtis: no offence but pic real no B&S 32C and pic don't look like it[2]

---

[1] Officer Curtis indicated in his police report that BBBJ is a common term for oral sex without a condom. (Case Report, Doc. 57-3 at 9.)

[2] Officer Curtis indicated in his police report that B&S is a common acronym for "bait and switch." (Case Report, Doc. 57-3 at 9.)

6:37 pm–Officer Curtis: 250 full service with hat[3]
6:43 pm–19712075092: 930 is fine. Yes

(Curtis GoogleVoice text messages, Doc. 135, Exhibit X at 3.)

Officer Manraksa applied for and received a search warrant for the purpose

of electronically monitoring and recording the meeting between Curtis and the

individual known as "Sunrae" (later identified as Alida Lattimore). (Baker SUF,

Doc. 111 at 8-9, ¶ 14-17.)

At 9:53 p.m., Officer Curtis received a text from the 971-207-5092 number

to go to room 104 at the Staybridge Suites. (Curtis GoogleVoice text messages,

Doc. 135, Exhibit X at 3.) Before Officer Curtis got to room 104, Detective Baker

observed Oliver get into his Chevy HHR and leave the parking lot. (Baker SUF,

Doc. 111 at ¶ 37.) Missoula Police Department Officer Jones and Sgt. Rose then

conducted a felony stop of Oliver's vehicle on Reserve Street and he was arrested

based upon the Municipal bench warrant for his arrest. (Bench Warrant, Doc. 57-

1; Rose Declaration, Doc. 116.)

Meanwhile, Curtis met with Lattimore in room 104. Lattimore indicated

that she was traveling from one city to another for short stays while doing "her

---

[3]Officer Curtis indicated in his police report that "full service with hat" is a common term for sexual intercourse with a condom. (Case Report, Doc. 57-3 at 9.)

rounds." It was clear to Officer Curtis that his conversation with Lattimore was about her travels to conduct prostitution in various cities. (Case Report, Doc. 57-3 at 9.) When Officer Curtis showed Lattimore the cash and told her he had $300, she told him he did not need to pay yet and to put the money in his pocket. Lattimore was then taken into custody. Curtis indicates that when he told Lattimore that he knew about Oliver and others being in Missoula for prostitution, she nodded yes. (Case Report, Doc. 57-3 at 10.)

Detectives Baker and Curtis attempted to interview Oliver back at the police station but he refused to answer their questions. He did, however, tell Curtis that he knew Curtis was in the hotel room with Lattimore. (Oliver interview, Doc. 135-3 at 71, 79-80.)

Lattimore was cited for misdemeanor prostitution and Oliver was cited for felony promoting prostitution. (Case Report, Doc. 57-3 at 10.)

On February 3, 2012, Oliver was charged in Justice Court, CR-2012-9330-CI with one count of promoting prostitution. He was appointed a public defender and his bail was set at $250,000.00. A preliminary hearing was set for February 17, 2012 at 4:00 p.m. (Criminal case docket, Doc. 57-6 at 4.) On February 3, 2012, Manraksa applied for and received a search warrant to search Oliver's vehicle, a cell phone, and a blackberry. (Msla PD SUF, Doc. 107 at 10, ¶ 34;

undisputed-Doc. 132). On February 7, 2012, Curtis applied for and received search warrants for records for the following phone numbers: 509-847-4315, 509-944-5591, 971-207-5092. (Msla PD SUF, Doc. 107 at ¶¶ 37-38.)

Lattimore was given a letter of immunity from prosecution. Officers Baker and Curtis interviewed Lattimore on February 6, 2012 and she provided detailed information admitting her activity as a prostitute. (PD SUF, Doc. 107 at 11, ¶ 39.) In that interview she explained that Oliver was her pimp and referred to himself as her pimp, Oliver and Lattimore came to Missoula to engage in prostitution, Oliver and Lattimore came to Missoula from Kalispell where they had also engaged in prostitution, Lattimore gave all the money she earned as a prostitute to Oliver and Oliver paid for what she needed, Oliver posted the ads on backpage.com so Lattimore's prostitution clients could find her, and Oliver made all the deals with Lattimore's prostitution clients. (Msla PD SUF, Doc. 107 at 12, ¶ 39, undisputed; Lattimore interview transcript, Doc. 121-5.)

Oliver was charged by information on February 16, 2012 in state district court with one count of promoting prostitution. (Doc. 107 at 13, ¶ 42, Doc. 107-11.) On April 4, 2012, Oliver was indicted by a federal grand jury on three felony counts of transportation of a minor for purposes of criminal sexual activity, transportation of a person for purposes of criminal sexual activity, and obstruction

of justice—witness tampering. *United States v. Oliver*, Criminal Action No. 12-cr-19-DLC, Doc. 1. On May 17, 2012, a superseding federal indictment was filed increasing the charged counts to eight. *Id.* at Doc. 33.

On January 23, 2013, Oliver was found mentally unfit to stand trial on the eight federal violations. *Id.* at Doc. 100. On June 18, 2013, all federal charges were dismissed without prejudice pursuant to the government's motion. *Id.* at Doc. 116.

On January 31, 2014, Missoula Deputy County Attorney Jennifer Clark sent information by e-mail to the Flathead County Attorney's Office apprising them of the evidence of prostitution uncovered by the FBI investigation concerning prostitution in Kalispell. (Clark Declaration, Doc. 114 at ¶ 3.)

On February 13, 2014, a second amended information was filed in the state court and Oliver was charged with tampering with a witness based upon the allegation that he sent letters to Lattimore suggesting she not appear for his criminal proceedings. (Doc. 107-14.) On February 18, 2014, in a written plea agreement and hearing, Oliver plead guilty in State District Court to the one count of witness tampering and the promoting prostitution charge was dismissed. (Doc. 107-15). Oliver was sentenced to four years in the custody of the Department of Corrections with credit for time served from February 2, 2012. (Judgment, Doc.

107-12.)

In April 2014, Defendant Baker and Missoula County prosecutor Jennifer Clark met with members of the Flathead County Attorney's Office to share information about Oliver's promotion of prostitution in that county's jurisdiction uncovered by the MPD/FBI investigations. (Clark Declaration, Doc. 114.) On August 5, 2014, a criminal Information was filed charging Oliver with promoting prostitution in Flathead County District Court, Cause # DC-14-273A. (Doc. 120-15.) On April 6, 2015, the Flathead County Attorney's Office filed a motion to dismiss Flathead County's promotion of prostitution charge after consideration of Oliver's legal argument of double-jeopardy with respect to his plea agreement in Missoula County District Court. (Boman Affidavit, Doc. 113.) On April 7, 2015, Flathead County District Court dismissed Cause # DC-14-273A in the interest of justice. (Doc. 120-19.)

## III. ALLEGATIONS

Oliver raised 12 claims for relief in his initial 71-page Complaint. (Doc. 2.) On June 24, 2015, the Hotel defendants, Counts 2, 5, 6, and 7, and the City of Missoula Police Department were dismissed for failure to state a claim. (Doc. 41.) On May 19, 2015, the Court allowed Oliver to amend his allegations and add counts 13 - 17, a second count 17 and count 18. (Doc. 29.) In his responses to

Defendants' Motions for Summary Judgment, Oliver conceded counts 4 and 16 as to all Defendants. (Doc. 133 at 8; Doc. 131 at 12.)

Accordingly, the following counts need to be addressed: 1, 3, 8, 9, 10, 11, 12, 13, 14, 15, 17, a second count 17, and 18. A description of those counts is as follows:

In Count 1, Oliver advances a Fourteenth Amendment claim against Defendants Curtis, Baker, and Manraksa for deliberate fabrication of evidence alleging they continued their investigation of Oliver knowing he was innocent; used investigative techniques that were so coercive and abusive that they knew or should have known that those techniques would yield false information; falsified information in their police reports, text message conversations, and in warrant applications; used coercive techniques on Alida Lattimore by offering her immunity to influence statements under duress that would yield false evidence; and acted wantonly, maliciously and willfully. (Doc. 2 at 48-50.)

In Count 3, Oliver raises claims of false arrest and unlawful incarceration against all named Defendants. He alleges Alida Lattimore did not agree to engage in sexual acts for compensation, but only offered a massage before she was arrested. (Doc. 2 at 53-56.) Oliver concedes that this claim should be dismissed as to Defendant Baker. (Doc. 133 at 6.)

-11-

Oliver makes a claim for invasion of privacy in Count 8. He alleges Defendants Baker, Curtis, and Manraksa invaded his privacy by illegally obtaining his personal information and using it to conduct criminal investigation searches on the internet. (Doc. 2 at 63 ¶ 257.) He also alleges his privacy was invaded by the use of the activated keycard to his room by Defendants Curtis, Baker, Manraksa, and Blakely without Oliver's consent. (Doc. 2 at 63, ¶ 259.)

In Count 9, Oliver claims Defendants engaged in malicious prosecution by disregarding exculpatory evidence, manipulating text messages and witness statements, presenting false information to obtain a search warrant, and presenting false police reports to the "District Attorney's Office." He alleges Defendants did so for the purpose of denying him equal protection and other constitutional rights. (Doc. 2 at 64-65.)

Oliver alleges he was subjected to intentional/negligent infliction of emotional, physical, and mental distress in Count 10. He makes this claim against all Defendants predicated upon his arrest at gunpoint and subsequent alleged assaults, handcuffing, isolation, and strip searches over the course of 25 months by correctional officers. (Doc. 2 at 66-68.)

In Count 11, Oliver advances a claim for slander and libel predicated upon alleged false and unprivileged statements that Oliver was a pimp, had a crackpipe,

and was running a prostitution ring from the Staybridge Suites.  (Doc. 2 at 68-69.)

In Count 12, Oliver claims loss of consortium.  (Doc. 2 at 70.)

In Count 13, Oliver alleges Defendants Curtis and Manraksa intentionally falsified and omitted material facts in search warrant applications submitted on February 3, 2012 for Oliver's rental car and on February 7, 2012 for Oliver's phone records.  (MSJ response, Doc. 131 at 4.)  He contends Defendants fabricated text messages and witness statements in warrant affidavits and coached Kathleen Giffin on her witness statement.  He alleges Giffin's witness statement stated she was approached by a guest complaining that Oliver had offered female championship but when she was interviewed she stated she heard a rumor that Oliver might have been the guy the complaint was made about.[4]  He alleges Defendants Curtis and Manraksa omitted that they were in contact with both numbers in the advertisement; omitted how Curtis obtained Oliver's phone number, and that the 911 call contradicts their statements.  (Doc. 18 at 7-9.) Oliver dismissed count 13 as alleged against Defendant Baker.  (Doc. 133 at 5.)

In Count 14, Oliver makes a claim of abuse of process against Defendants

---

[4]Giffin stated in her 911 call: "But anyways, what kind of set us off was one of our other guests mentioned to our front desk the last time they were here that they'd run into each other at the gas station and he proceeded -- this Clifton gentleman proceeded to ask one of our other guests if he was interested in one of his girls."  (911 Transcript p. 5, lines 9-15, Doc. 135-1 at 3.)

Baker, Curtis, and Manraksa. He alleges these Defendants were involved with preparing the warrant affidavits and knew they were fraudulent. He specifically alleges that Defendant Baker abused process by fabricating Kathleen Giffen's statement in FD-302 form and report in regards to witness tampering. (Doc. 18 at 9-10.)

In Count 15, Oliver alleges malicious prosecution against all Defendants based upon the prosecution against him in Flathead County. He alleges Defendants prosecuted him with malice and without probable cause for the purpose of denying him equal protection and other constitutional rights including freedom from successive prosecution and speedy trial. He also claims this prosecution interfered with his ability to obtain parole and/or pre-release. (Doc. 18 at 10.)

Oliver brings a state law tort claim for the negligent spoliation of evidence with regard to the allegedly destroyed text messages in the first Count 17. (Doc. 18 at 11.)

In the second Count 17, Oliver alleges a conspiracy claim against Defendants Baker, Curtis and Manraksa with regard to the allegedly unlawful arrest, incarceration and malicious prosecution of Oliver. (Doc. 24 at 1.)

In Count 18, Oliver presents an equal protection claim based upon racial

profiling. He claims the charges against him were entirely false and Defendants

racially profiled him when they instigated and participated in the false criminal

charges against him. (Doc. 24 at 2.)

## IV. MOTIONS FOR SUMMARY JUDGMENT

### A. Standard

Federal Rule of Civil Procedure 56(a) entitles a party to summary judgment

"if the movant shows that there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law." The movant bears the

initial responsibility of informing the district court of the basis for its motion, and

identifying those portions of the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, which it believes demonstrate

the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S.

317, 323 (1986). Once the moving party has satisfied its burden, the non-moving

party must go beyond the pleadings and designate by affidavits, depositions,

answers to interrogatories, or admissions on file, "specific facts showing that there

is a genuine issue for trial." *Id.* at 324. In deciding a motion for summary

judgment, the Court views the evidence in the light most favorable to the

nonmoving party and draws all justifiable inferences in the non-moving party's

favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The Court must grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a) (quotation marks omitted); *Washington Mutual Inc. v. U.S.*, 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed.R.Civ.P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, although it is not required to do so. Fed.R.Civ.P. 56(c)(3); *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *accord Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

A fact is material if it might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248. A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* A defendant does not bear the burden of proof at trial and in moving for summary judgment, he need only prove an absence of evidence

to support the plaintiff's case. *In re Oracle Corp. Securities Litigation*, 627 F.3d 376, 387 (9th Cir. 2010) (*citing Celotex*, 477 U.S. at 323). If a defendant meets his initial burden, the burden then shifts to the plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp.*, 627 F.3d at 387 (*citing Celotex*, 477 U.S. at 323). This requires a plaintiff to "show more than the mere existence of a scintilla of evidence." *Id.* (*citing Anderson*, 477 U.S. at 252).

In judging the evidence at the summary judgment stage, however, the Court may not make credibility determinations or weigh conflicting evidence. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted). The Court must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment. *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted). The Court determines only whether there is a genuine issue for trial and in doing so, it must liberally construe Oliver's filings because he is a pro se prisoner. *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

By contemporaneous notices provided January 13, 2016 (Doc. 108) and

January 20, 2016 (Doc. 119), Oliver was advised of the requirements for opposing

motions brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See*

*Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998)(en banc); *Klingele v.*

*Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

### B. Malicious Prosecution/False Arrest Claims

"To maintain a § 1983 action for malicious prosecution, a plaintiff must

show that the defendants prosecuted [him] with malice and without probable

cause, and that they did so for the purpose of denying [him] a specific

constitutional right." *Smith v. Almada*, 640 F.3d 931, 938 (9th Cir. 2011) (internal

quotation marks and brackets omitted). The claim also "requires 'the institution of

criminal proceedings against another who is not guilty of the offense charged' and

that 'the proceedings have terminated in favor of the accused.' " *Lacey v.*

*Maricopa County*, 693 F.3d 896, 919 (9th Cir. 2012) (en banc) (quoting

Restatement (Second) of Torts § 653 (1977)).

Probable cause for arrest is a complete defense to claims of false arrest and

malicious prosecution. *See Beauregard v. Wingard*, 362 F.2d 901, 903 (9th Cir.

1966) ("where probable cause does exist[,] civil rights are not violated by an arrest

even though innocence may subsequently be established"). "An officer has

probable cause to make a warrantless arrest when the facts and circumstances

-18-

within his knowledge are sufficient for a reasonably prudent person to believe that the suspect has committed a crime." *Rosenbaum v. Washoe Cnty.*, 663 F.3d 1071, 1076 (9th Cir. 2011). Probable cause analysis requires consideration of the facts known to the officer at the time of the arrest and the criminal statute to which those facts apply. *Id.*

It is undisputed that Oliver was arrested on a bench warrant. Therefore, he cannot state a claim with regard to his initial arrest. To the extent, that there was some period of time between the dismissal of the bench warrant and his arraignment on the promoting prostitution charge, the officers clearly had probable cause to charge Oliver with promoting prostitution. Prior to charging Oliver, Defendants had the following information:[5] (1) Oliver had rented Room 104 of the Staybridge Suites on February 2, 2012, for one night; (2) since October 2011, Oliver had stayed at the hotel approximately nine times, ranging from one to four nights; (3) he always paid cash for his hotel rooms; (4) prostitution is a cash dependent business; (5) Oliver always shared his room with young females; (6) employees at the hotel described the women with Oliver as "working girls"; (7) a witness had reported to the police that she observed Oliver's female companion

_____

[5]Oliver may object to where and exactly when the officers received each piece of information but it is undisputed that the officers had the following information prior to charging Oliver with promoting prostitution.

smoking what she described as a "crackpipe"; (8) Oliver would sometimes extend

his visits beyond what he originally paid for; (9) employees had reported seeing

Oliver spend periods of time alone in the lobby of the hotel; (10) hotel employees

reported that an individual matching Oliver's description had previously offered

one of "his girls" to another guest during one of Oliver's stays; (11) the hotel

employees told Defendants that Oliver's phone number in the hotel registry was

971-207-5092; (12) Oliver's phone number was linked to two websites known to

law enforcement for use in relation to advertising and facilitating prostitution; (13)

the backpage.com website contained a sexually oriented classified posting for

unspecified paid services, which included Oliver's phone number and photographs

of a young, scantily dressed female addressed by the pseudonym "Sunrae"; (14)

the NaughtyReviews.com website contained a page accepting reviews of

"Sunrae," indicating she was in Missoula and used some of the same pictures

found on the backpage.com website; (15) Curtis sent texts to the 971-207-5092

number wherein there was an agreement to engage in sex for money; (16) the

person responding to Curtis's text agreed to meet Curtis at 9:30 at room 104 at the

Staybridge Suites, the room which Oliver had checked into; and (17) Oliver was a

multi-state offender with an extensive criminal history, including previous federal

convictions for interstate travel to engage in sex with a minor, and arrests for

aiding and abetting prostitution, unlawful possession of firearm, and numerous assaults.

These facts taken together, clearly establish probable cause that Oliver was promoting prostitution. This evidence was bolstered even further when Curtis and Baker interviewed Lattimore four days after Oliver's initial arrest and she confirmed in explicit detail that Oliver was her pimp, he arranged the prostitution meetings, and he collected and controlled all the money earned through prostitution. (Lattimore interview Feb. 6, 2012, Doc. 121-5.)

At 2:26 p.m. on February 3, 2012, there was a judicial finding that there was probable cause to believe that Oliver had committed the offense of promoting prostitution. (Criminal Complaint, Doc. 121-14.) Although Oliver makes what he describes as a *Franks v. Delaware* claim and alleges Defendants engaged in judicial deception, he presented no evidence or clear argument regarding what false evidence was reported. Where a Section 1983 plaintiff challenges the issuance of a warrant based upon the assertions or omissions of the officer applying for that warrant, the Ninth Circuit requires application of the rule announced in *Franks v. Delaware*, 438 U.S. 154 (1978). *Liston v. County of Riverside*, 120 F.3d 965, 972 (9th Cir.1997) (noting the "Franks standard, although developed in a criminal context, also defines the scope of qualified

-21-

immunity in civil rights actions"). "Franks established a criminal defendant's right to an evidentiary hearing when he made a showing of deliberate or reckless disregard for the truth in a search warrant affidavit and demonstrated that but for the dishonesty, the affidavit would not support a finding of probable cause." *Liston*, 120 F.3d at 972 (*citing Franks,* 438 at 171–72).

Oliver argues minor discrepancies regarding when and/or how the officers obtained the information above but there is no plausible material issue of fact regarding what information the officers had prior to citing Oliver for promoting prostitution. Oliver presented no credible evidence to find that Defendants falsified or omitted material evidence when presenting this case to the prosecutors and/or the court.

As there was probable cause to arrest and prosecute Oliver for the crime of promoting prostitution, Counts 1, 3, 9, 10, 12, 13, 14, and 15 should be dismissed.

**B. Invasion of privacy claim (Count 8)**

Count 8 alleges an invasion of privacy claim against Defendants Manraksa, Baker, Curtis and Blakely based upon his allegation that they illegally obtained his personal information and used it in order to conduct a criminal investigative search on internet sites. Presumably, Oliver alleges a cause of action based upon the use of his phone number from the hotel registry to find the ads on

backpage.com and other sites. He also complains that it was an invasion of privacy to use a keycard given to the officers by hotel staff in order to enter his hotel room.

There is no specific guarantee of a "right to privacy" found in the Constitution. *Paul v. Davis*, 424 U.S. 693, 712-14 (1976). Moreover, as indicated in prior Orders in this case, hotel "guests lack any privacy interest of their own in the hotel's records." *Patel v. City of Los Angeles*, 738 F.3d 1058, 1062 (9th Cir. 2013) *citing U.S. v. Cormier*, 220 F.3d 1103, 1108 (9th Cir. 2000). The information in the Hotel's business records is the Hotel's private property in which Oliver possesses no reasonable expectation of privacy. *Id.*

Although not addressed by the parties, Oliver also raises a claim that his privacy was invaded by the use of the activated keycard to his room by Defendants Curtis, Baker, Manraksa, and Blakely without Oliver's consent. (Doc. 2 at 63, ¶ 259.) This claim is also without merit. In the Ninth Circuit, "where an undercover agent is invited into a home, establishes the existence of probable cause to arrest or search, and immediately summons help from other officers, the warrantless entry of the other officers does not violate the Fourth Amendment." *U.S. v. Bramble*, 103 F.3d 1475, 1478 (9th Cir. 1996).

### C. Slander/libel claim (Count 11)

It is not clear whether Oliver is still pursuing a slander/libel claim against any named Defendant. In Count 11 of the original Complaint, Oliver alleged that Defendants made statements and reports to the effect that Oliver was a pimp, had a crackpipe and was running a prostitution ring business from the Staybridge Suites Hotel in Missoula. (Complaint, Doc. 2 at 68-69.) He dismissed this claim against Defendant Baker in his response to Defendant Baker's Motion for Summary Judgment (Doc. 133 at 14.) Even if he still intends to pursue a claim against another defendant, he provided insufficient evidence to support such a claim. There is no indication in the record regarding what Defendant may have made any such publication and there is no evidence that any Defendant published any such statements to other individuals except in the course of their investigation as police officers. See *White v. Maurier*, 2014 WL 1056335 (D.Mont. 2014) citing Mont. Code Ann. § 27-1-804. This claim should be dismissed.

### D. Spoilation of evidence claim (Count 17)

The elements of an action for intentional spoliation are: (1) the existence of a potential lawsuit, (2) defendant's knowledge of the potential lawsuit, (3) the intentional destruction of evidence designed to disrupt or defeat the potential lawsuit, (4) disruption of the potential lawsuit, (5) a causal relationship between

the act of spoliation and the inability to prove the lawsuit, and (6) damages. *Oliver v. Stimson Lumber Co.*, 993 P.2d 11, ¶ 56 (Mont. 1999). Oliver has continually speculated throughout this lawsuit that Defendants Curtis and/or Manraksa destroyed records from any one of a number of Googlevoice accounts. In his response to these Defendants' motion for summary judgment on this issue, he speculates that a Googlevoice account 541-510-7319 was destroyed by Curtis and Manraksa because it contained exculpatory evidence. (Doc. 131 at 12-13.) He also speculates that Defendant Curtis deleted text messages from his flip phone. (Doc. 131 at 13.)

Oliver, however, presented no plausible evidence to support these allegations. This claim should be dismissed.

**E. Equal Protection**

"To prevail on an equal protection claim under the Fourteenth Amendment, a plaintiff must demonstrate that enforcement had a discriminatory effect and the police were motivated by a discriminatory purpose." *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 920 (9th Cir. 2012) (*citing Rosenbaum v. City & Cnty. of S.F.*, 484 F.3d 1142, 1152 (9th Cir. 2007)). To prove a discriminatory effect, "the claimant must show that similarly situated individuals . . . were not prosecuted." *United States v. Armstrong*, 517 U.S. 456, 465 (1996).

There is no evidence in the record to suggest that any Defendant acted with a discriminatory purpose. Oliver presents no evidence showing that other similarly situation individuals–for example white males engaged in promoting prostitution–were not prosecuted.

Oliver's equal protection claim should be dismissed.

**F. Oliver's Motion for Summary Judgment**

For the reasons set forth above, the Court finds that Defendants did not violate Oliver's constitutional rights with regard to his arrest and prosecution. For those same reasons, the Court finds that Oliver's motion for summary judgment should be denied.

**V.  MOTION FOR SUBPOENA**

The Court dealt with Oliver's requests for subpoenas in its Order of December 18, 2015 (Doc. 94) and will not reconsider that ruling.

Based upon the foregoing, the Court issues the following:

**ORDER**

Oliver's Motion Requesting Court Order Approving Service of Subpoena to Staybridge Suites (Doc. 127) is denied.

Further, the Court issues the following:

## RECOMMENDATIONS

1. Defendants Curtis, Manraksa, Blakely, and Kaneff's Motion for Summary Judgment (Doc. 103) should be granted.

2. Defendant Baker's Motion for Summary Judgment (Doc. 109) should be granted.

3. Plaintiff Clifton Oliver's Motion for Partial Summary Judgment (Doc. 128) should be denied.

4. The Clerk of Court should be directed to have the docket reflect that this dismissal counts as a strike pursuant to 28 U.S.C. § 1915(g). Oliver's claims are frivolous and malicious.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

The parties may file objections to these Findings and Recommendations within fourteen (14) days after service (mailing) hereof.[6] 28 U.S.C. § 636. Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

---

[6]As this deadline allows a party to act after the Findings and Recommendations is "served," it falls under Fed.R.Civ.P. 6(d). Therefore, three (3) days are added after the period would otherwise expire.

This order is not immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Fed.R.App.P. 4(a), should not be filed until entry of the District Court's final judgment.

DATED this 7th day of June, 2016.

Jeremiah C. Lynch
United States Magistrate Judge